UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
MICHAEL HOLNESS AND JANEE HOLNESS,           :
                                                             :
                              Plaintiffs,                    :
            -against-                                        :
                                                             :
LG CHEM LTD., RRV ENTERPRISES, LLC,          :
and EC SUPPLY, INC,                                          :
                                                             :
                              Defendants.                    :
-------------------------------------------------------------X
LG CHEM LTD.,                                                :
                                                             :
                              Third-Party Plaintiff,         :
            -against-                                        :
                                                             :
GIGGLESWORLD CORPORATION, D/B/A              :
HAPPY HABITS VAPE AND SMOKE SHOP             :
and EC SUPPLY INC.,                                          :
                                                             :
                              Third-Party Defendants.        :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___11/8/2021____

17-cv-07726 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs Michael and Janee Holness ("Plaintiffs") bring this action alleging claims for negligence, breach of express and implied warranties, failure to warn, strict liability, and loss of consortium after Michael Holness was injured when a battery exploded in his pocket. (*See* Amended Complaint ("Am. Compl.") ECF No. 85.) Plaintiffs assert these claims against LG Chem LTD ("LG Chem"), RRV Enterprises, LLC ("RRV Enterprises"), and EC Supply, Inc. ("EC Supply"), alleging each participated in the manufacturing and/or distributing of the batteries. (*Id.*) LG Chem has filed a third-party complaint against Gigglesworld Corporation ("Gigglesworld") and EC Supply alleging they participated in distributing and selling the battery purchased by

1

Michael Holness.  (ECF No. 77.)  Presently before the Court are EC Supply's motion for summary judgment (ECF No. 202) and Plaintiffs' motion for sanctions against third-party Gigglesworld (ECF No. 204.)  For the following reasons, EC Supply's motion is GRANTED, and Plaintiffs' motion is DENIED.

## **BACKGROUND**

I.     *Plaintiffs' Accident and Investigation*

On May 14, 2016, Michael Holness was severely and permanently burned and injured when a lithium-ion battery spontaneously combusted and caught on fire in his pocket.  (Am. Compl. ¶ 35.)  In August of 2017, counsel for Plaintiffs communicated with the insurer of Gigglesworld, Dryden Mutual Insurance Company, to try to identify the distributor of the offending batteries before filing suit.  (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion Pursuant to Rule 37 Against Third-Party Defendant Gigglesworld Corporation d/b/a Happy Habits Vape & Smoke Shop ("Pls.' Mem") ECF No. 200, at 4.)  On August 23, 2017, the insurer stated he emailed a representative from Gigglesworld with photographs of the batteries, and the representative assured him that the batteries were not purchased from his store and were instead "knock offs."  (Declaration of Alexander J. Drago, Esq. ("Drago Declaration") ECF No. 200, Ex. H.)  Plaintiffs' counsel responded that LG Chem inspected the batteries and confirmed they were LG batteries, and that he has photographs of the batteries being sold in Gigglesworld's store.  (*Id*.)  He asked that the insurer inquire as to where Gigglesworld purchased the batteries.  (*Id*.)  The insurer responded that the representative stated the store's Buyer would go through the records to see who they purchased the batteries from.  (*Id*.)  On August 28, 2017, counsel followed up, and the insurer stated Gigglesworld was "still adamant" that the batteries were not sold from its store.  (*Id*.)

After receiving the inquiry from the insurer, the President of Gigglesworld, Timothy Serino, asked the company's Buyer, Angela Bernardo, to review the photographs sent by Plaintiffs' counsel.  (Declaration of George A. Smith, Esq. ("Smith Declaration") ECF No. 205, Ex. G at ¶¶ 1; 4-10.)  Serino asked whether the batteries were sold by Gigglesworld stores, to which Bernardo replied she did not believe so as the batteries in the photograph appeared to be red and Gigglesworld did not sell this kind of battery in the color red in its stores.  (*Id*.)  Instead, she believed they were "knock offs."  (Smith Declaration Ex. F ¶ 7.)

On October 9, 2017, Plaintiffs filed this action against LG Chem and RRV Enterprises for their roles in distributing and/or manufacturing the battery.  (ECF No. 1.)

## II.    Discovery

In November of 2018, Gigglesworld sent responses to LG Chem's first request for the production of documents and first set of interrogatories.  (Drago Declaration Exs. J & K.)  LG Chem requested documents related to batteries manufactured by LG Chem and information regarding who it purchased 18650 lithium-ion batteries from.  (*Id*.)  Gigglesworld generally responded that it had no documents and no information.  (*Id*.)

On February 7, 2019, LG Chem served a corporate deposition notice on Gigglesworld. (Drago Declaration Ex. O.)  The notice requested the testimony of the person most knowledgeable regarding the sale of LG Chem batteries, and requested the production of documents related to the purchase and sale of LG batteries.  (*Id*.)  In response, Gigglesworld produced Timothy Serino. (Drago Deposition Ex. L.)  During the deposition, it was made clear that Serino was not the most knowledgeable employee on the requested topics, as he admitted he was in charge of the adult products while Angela Bernardo was in charge of the vape devices.  (*Id*. at 22:6-11.)  When asked questions about the distributors of the batteries, Serino stated he had no knowledge, and that LG

Chem would have to ask Bernardo. (*Id*. at 23:11-14.) Additionally, Gigglesworld produced no documents during this time, even though Serino discussed the filing system for invoices. (*Id*. at 30:16–33:8; Pls.' Mem. at 8.)

On April 1, 2019, Plaintiffs sent a Notice to Produce to Gigglesworld, which it responded to on May 7, 2019. (Smith Declaration Ex. B.) Plaintiffs requested "vape safety flyers," which Gigglesworld produced. (*Id*.; Third Party Defendant's Memorandum of Law in Opposition to Plaintiffs' Rule 37 Motion ("Gigglesworld's Opp.") ECF No. 204, at 16.) These were the only discovery demands sent by Plaintiffs to Gigglesworld. (Gigglesworld's Opp. at 16.)

On June 6, 2019, Bernardo was deposed. (Drago Declaration Ex. M.) During her deposition, she named EC Supply as the distributor of the LG Chem batteries. (*Id*. at 43:12-20.) She also stated Gigglesworld has records regarding these purchases. (*Id*. at 43:23–44:1.) On June 17, 2019, LG Chem sent post-deposition discovery demands to Gigglesworld. (Smith Declaration Ex. E.)

On July 7, 2019, LG Chem filed an amended third-party complaint adding EC Supply as a third-party defendant. (ECF No. 77.) On July 31, 2019, in response to the post-deposition discovery demands, counsel for Gigglesworld forwarded to all parties a letter enclosing its purchase records for the LG Chem batteries in 2015 and 2016, which included purchase records from EC Supply. (Drago Declaration Ex. N.) On August 27, 2019, Plaintiffs filed an Amended Complaint that named EC Supply as a direct defendant. (ECF No. 85.) On September 4, 2019, EC Supply filed an answer to the Amended Complaint, asserting a crossclaim against all defendants and third-party defendants, including Gigglesworld. (ECF No. 90.) On February 8, 2021, EC Supply filed a motion for summary judgment. (ECF No. 202.) Also on February 8, 2021, Plaintiffs filed a motion for sanctions against Gigglesworld. (ECF No. 204.)

4

**LEGAL STANDARD**

I.      **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including deposition testimony, interrogatories, affidavits, and admissions "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 258. Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury could return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250; 252. Summary judgment should be granted when a party "fails to

5

make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## II.      Rule 37 Sanctions

Rule 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery," the court "may make such orders in regard to the failure as are just."  Fed. R. Civ. P. 37(b)(2).  Courts have "'wide discretion' in imposing sanctions under Rule 37."  *Shcherbakovskiy v. Da Capo Al Fine, Ltd*., 490 F.3d 130, 135 (2d Cir. 2007) (citation omitted).  Courts are guided by several non-exclusive factors in assessing the appropriate sanction under this rule, including: "(1) the willfulness of the non-compliant party or the reason for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *S. New England Tel. Co. v. Global NAPs Inc*., 624 F.3d 123, 144 (2d Cir. 2010) (citation and internal quotation marks omitted).  Courts may consider the "entire record" to determine the appropriate sanction under Rule 37.  *Monroe v. GEO Grp., Inc*., 14 Civ. 3130 (ER), 2017 WL 3973942, at *4 n.5 (S.D.N.Y. Sept. 7, 2017).

The sanctions specified within the rule are not exhaustive, and the Court may impose such sanctions as are just.  *Miltope Corp. v. Hartford Casualty Ins. Co*., 163 F.R.D. 191, 194 (S.D.N.Y. 1995).  Rule 37 sanctions "must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of a deterrent."  *Roadway Express Inc. v. Piper*, 447 U.S. 752, 763–64 (1980).

Additionally, the court may "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs," even absent a discovery order.  *Glover v. Costco Wholesale Corp*., 153 Fed. Appx. 774, 776 (2d Cir. 2005); *see also Chambers v. NASCO,*

6

*Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'") (citing *United States v. Hudson*, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1812)).

## DISCUSSION

### I.   Summary Judgement

The parties agree that New York's statute of limitations periods apply to Plaintiffs' claims, and that Plaintiffs' Amended Complaint was filed after the three-year deadline imposed by the New York statute of limitations.  Therefore, Plaintiffs' claims against EC Supply are untimely and must be dismissed.  Plaintiffs make two main arguments against dismissal: (i) LG Chem's third-party complaint filed against EC Supply was timely filed and provided EC Supply notice of the claims, and (ii) policy considerations would not be offended by denying the motion.  (Plaintiffs' Memorandum of Law in Opposition to EC Supply's Motion for Summary Judgment on Statute of Limitations ("Pls.' Opp.") ECF No. 203, at 3-7.)

### a.   Relation-Back Doctrine

Plaintiffs appear to be arguing that the Court should apply the relation back doctrine to the Amended Complaint.  Under this doctrine, "an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable limitations period."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (internal quotation marks omitted).  Pursuant to Fed. R. Civ. P. 15(c)(1)(C), relation back is appropriate where the following conditions are met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and

(4) the second and third criteria are fulfilled within 120 days of the filing of the [timely] original complaint[.]

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468–69 (2d Cir. 1995)).

When relation back cannot be found under Rule 15(c)(1)(C), the state law "that provides the applicable statute of limitations" can be considered if it provides a more lenient rule.  *See* Fed. R. Civ. P. 15(c)(1)(A); *Hogan*, 738 F.3d at 517–20 (applying New York relation back principles where the federal standard was less permissive).  New York law allows a plaintiff's claim to relate back where:

> (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Buran v. Coupal*, 87 N.Y.2d 173 (N.Y. 1995) (citing *Brock v. Bua*, 83 A.D.2d 61, 69 (App. Div. 2d Dep't 1981).  "[T]he doctrine enables a plaintiff to correct a pleading error . . . after the statutory limitations period has expired [and] . . . thus gives courts the 'sound judicial discretion' to identify cases 'that justify relaxation of limitations strictures . . . to facilitate decisions on the merits' if the correction will not cause undue prejudice to the plaintiff's adversary."  *Id.* (citation omitted).

Here, Plaintiffs focus on the notice element of the doctrine.  They first aver that because LG Chem's amended third-party complaint against EC Supply was timely filed, EC Supply had actual notice of Plaintiffs' claims.  (Pls.' Opp. at 3-4.)  Plaintiffs analyze this using the six-year statute of limitations for LG Chem's claims for express or implied contractual obligation or liability.  (*Id.* at 3.)  However, LG Chem's amended third-party complaint was filed on July 7, 2019, which is almost two months after the three-year statute of limitations for Plaintiffs' claims

expired.  Even if Plaintiffs' Amended Complaint were to refer back to the date the amended third-party complaint was filed, it would still be untimely.

Plaintiffs next argue that under New York's relation back statute, the parties here are united in interest as "based upon the law of strict product liability in New York, they would all stand or fall together." (Pls.' Opp. at 6.)  The requirement of unity of interest requires the Court to examine whether "the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other." *Higgins v. City of New York*, 144 A.D.3d 511, 513 (App. Div. 1st Dep't 2016).  While Plaintiffs cite to *Cartagena v. City of New York*, 159452/2017, 2020 N.Y. Misc. LEXIS 2935, at *6 (Sup. Ct. June 24, 2020), this case makes clear that "unity of interest will not be found unless there is some relationship between the parties giving rise to the vicarious liability of one for the conduct of the other."  Plaintiffs cite no support for their claim that strict liability claims produce a unity of interest.  *See 1626 Second Ave., LLC v. Metro. Transp. Auth.*, 2020 WL 2494868, at *1–3 (Sup. Ct. May 14, 2020) (holding the relation back doctrine did not apply to the plaintiff's strict liability claim against a subsidiary corporation of another defendant).

Plaintiffs lastly aver that "weighing the equities," EC Supply's motion should be denied as they were "diligent" in attempting to determine its identity.  (Pls.' Opp. at 5-7.)  They state they were prejudiced by third-party Gigglesworld, who thwarted their discovery attempts.  (*Id*. at 7.)  Plaintiffs cite to *May v. Buffalo MRI Partners, L.P.*, 151 A.D.3d 1657 (App. Div. 4th Dep't 2017), for their argument that relation back may apply where the defendant failed to provide the identity of the proposed new defendant before the statute of limitations deadline.  However, *May* is distinguishable as the new defendant had a unity of interest with the others pursuant to the doctrine of vicarious liability, the court held the plaintiff made a mistake by failing to include the new

defendant in the original complaint, and he had notice within the applicable statute of limitations period.  *Id*. at 1658–59.

Therefore, the relation back doctrine cannot be applied to Plaintiffs' Amended Complaint, and their claims against EC Supply are untimely.

### b.  *Policy Considerations*

Plaintiffs next argue that policy considerations underlying the statute of limitations would not be offended by denying EC Supply's motion.  (Pls.' Opp. at 4-5.)  First, Plaintiffs allege that the "primary purpose" of the limitations period, or "fairness to a defendant," is not an issue here as EC Supply has already participated in two years of discovery.  (*Id*. at 4) (citing *Duffy v. Horton Memorial Hospital*, 66 N.Y.2d 473, 477 (N.Y. 1985)).  *Duffy* emphasizes that a defendant should not have to defend himself or herself against a claim where "evidence has been lost, memories have faded, and witnesses have disappeared," as well as the "need to protect the judicial system from the burden of adjudicating stale and groundless claims."  *Duffy*, 66 NY.2d at 476–76.  However, *Duffy* also emphasizes that "[t]he situation is far more difficult . . . when an amendment is sought to add a new party defendant," and "[t]hus, if the new defendant has been a complete stranger to the suit up to the point of the requested amendment, the bar of the Statute of Limitations must be applied."  *Id*. at 477.  As EC Supply was a complete stranger up until LG Chem's requested amendment, filed after the limitations period had run, this is the case here.

Plaintiffs lastly argue that there are "eight other suits against EC Supply for supplying batteries that exploded" and therefore "EC Supply knew full well that it was probable that it would be named in any litigation where one of the batteries it supplied exploded."  (Pls.' Opp. at 5.) While this may be true, it does not impact the Court's analysis, and Plaintiffs cite no support showing a similar set of circumstances that resulted in the limitations period not being enforced.

10

Therefore, EC Supply's motion for summary judgment is granted.

## II.     Rule 37 Sanctions

Plaintiffs are requesting the Court grant its motion for sanctions under Rule 37 and to strike Gigglesworld's Answer due to "intentional falsehoods in the discovery process." (Pls.' Mem. at 2.) Plaintiffs allege that but for Gigglesworld's deceptive discovery responses and deposition testimony, they would have identified EC Supply as the distributor of the relevant batteries in time to file suit against it. (*Id.* at 1-2.) While the Court recognizes the record reflects Gigglesworld's insufficient participation in the discovery process, it is not solely to blame for Plaintiffs' failure to identify EC Supply.

As an initial matter, it is clear that Gigglesworld failed its discovery obligations. First, Gigglesworld's responses to LG Chem's discovery requests and interrogatories were clearly insufficient. Specifically, LG Chem requested documents memorializing the "purchase, sale, and/or distribution" as well as "transactions" involving "batteries, chargers, and any other equipment allegedly manufactured by Third-Party Plaintiff LG Chem, Ltd." (Drago Declaration Ex. J.) In response to these requests, Gigglesworld stated "upon information and belief" it "did not sell the battery in question" and had "none." (*Id.*) Similarly, in response to interrogatories asking for the identities of "all distributors, vendors, and/or salesmen from whom you purchased 18650 lithium-ion batteries" and "an alleged LG 18650 HG2 lithium-ion battery," Gigglesworld responded "upon information and belief, none." (Drago Declaration Ex. K.) Additionally, when asked for "employees with the most knowledge concerning Gigglesworld's sale of lithium ion batteries" Gigglesworld responded "Tim Serino." (*Id.*)

The responses provided by Gigglesworld were clearly inadequate. Gigglesworld knew it sold LG batteries before this suit was even filed, which it began doing in 2015. (Drago Declaration

Ex. M at 43:12-20.)  This is also made clear by the purchase records that were eventually produced after the statute of limitations had already expired for Plaintiffs' claims.  (Drago Declaration Ex. N.)  To respond to document requests and interrogatories asking for documents and information about these batteries and state there were "none" is clearly untruthful.

Gigglesworld attempts to argue that its responses were truthful, as its position is that it did not sell the battery that injured Mr. Holness.  (Gigglesworld's Opp. at 12; 14.)  However, that is irrelevant to this analysis.  LG Chem's discovery requests asked for documents and information about LG Chem batteries generally, not just the specific battery involved in the suit.  Gigglesworld could have maintained its argument that it did not sell the battery, while also responding fully to the requests.

Second, Gigglesworld's designation of Serino as its corporate designee was also an insufficient response to LG Chem's discovery requests.  The Notice of Deposition specifically requested the "person most knowledgeable" at Gigglesworld about the "sale" and "purchase of LG Chem batteries"; "the manufacturers" and "distributors of the e-cigarette lithium-ion batteries sold by" Gigglesworld, and "purchase information and/or receipts from suppliers," among other topics. (Drago Declaration Ex. O.)  The Notice also made a request for all documents "relating to purchases and sales of LG batteries" and "distributors, wholesalers, or manufacturers of the LG Chem batteries."  (*Id*.)  In response to this Notice, LG Chem deposed Serino in March of 2019. (Drago Declaration Ex. L at 7:16-20.)

During the deposition, Serino made it clear that he was not the person most knowledgeable on any of these topics.  Specifically, he stated he was "not in charge of any buying of vaping products or accessories," instead he is "in charge of adult products."  (*Id*. at 22:6-11.)  He also stated Angela Bernardo is in charge of the vaping devices, and she would have "relationships with

12

. . . distributors" and knowledge of "invoicing," "purchasing," "types of batteries [Gigglesworld] sells," and distributors of the batteries used in vapes.  (*Id.* at 19:22–20-7; 22:9-23; 23:11-14; 24:16-18.)  Bernardo was not deposed until June 6, 2021, where she was able to answer these questions and named EC Supply as the relevant distributor.  (Drago Declaration Ex. M at 43:12-20.)

However, Gigglesworld is not the only party to blame for Plaintiffs' current predicament. With a more active effort, Plaintiffs likely would have received the required information long before the statute of limitations was up.  This case was referred to Magistrate Judge Davison for discovery and pretrial proceedings on May 3, 2018.  (ECF No. 25.)  The record reflects that the parties engaged in discovery, with Plaintiffs and LG Chem serving discovery requests on Gigglesworld during this time.  (Smith Declaration Ex. B; Drago Declaration Exs. J & K.) However, the record reflects not only did Plaintiffs not file their own discovery requests on Gigglesworld inquiring as to the source of the relevant batteries (*see* Gigglesworld's Opp. at 16; Smith Declaration Ex. B), but they also failed to zealously advocate for the discovery they believed they were owed.

After LG Chem's discovery requests were answered on November 8, 2018, Plaintiffs filed multiple letters to the Court regarding LG Chem's insufficient discovery responses (ECF Nos. 58 & 59) but failed to discuss Gigglesworld's lack of responsiveness.  Further, on December 6, 2018, the parties had a conference before Judge Davison where he directed the parties to meet and confer about all outstanding discovery disputes, and if any remained they were to file a letter by December 11, 2018.  (Minute Entry dated Dec. 6, 2018.)  On December 10, 2018, Plaintiffs filed a letter discussing outstanding discovery issues they were having with LG Chem.  (ECF No. 64.) Gigglesworld's failure to properly respond was not mentioned.  (*Id.*)  In fact, a review of the record shows no mention of the information Plaintiffs had requested before the lawsuit was filed or

Gigglesworld's discovery responses within the 12 months of discovery that occurred before the statute of limitations expired.  Plaintiffs could have brought this issue up to the Court at multiple points, including when Gigglesworld responded to the discovery requests, when the Court asked about outstanding discovery issues, and when Tim Serino was designated as Gigglesworld's corporate designee.

In Plaintiffs' reply, they aver that they did not file a motion to compel as Gigglesworld did not fail to produce records, but instead stated it did not have any such records and only produced them after the limitations period was up.  (Plaintiffs' Memorandum of Law in Reply to Gigglesworld Corporation d/b/a Happy Habits Vape & Smoke Shop's Opposition ("Pls.' Reply") ECF No. 201, at 2.)  However, Plaintiffs should have been on notice of the existence of the records after Serino's deposition, where he discussed the company's invoice processing and filing system. (Drago Declaration Ex. L at 30:16–33:8.)  He described that Gigglesworld collects invoices from shipments and keeps them organized by distributor in file cabinets.  (*Id*.)  That discussion notified Plaintiffs that the invoices were maintained by Gigglesworld, and provided Plaintiffs exactly two months to involve the Court in this matter, if necessary.  Instead, Plaintiffs waited until June, three months later, to follow up with Gigglesworld's employee with additional knowledge on the subject.  (Drago Declaration Ex. M; Smith Declaration Ex. E.)  Therefore, the Court will use its discretion to deny Plaintiffs' request for sanctions.

Plaintiffs' arguments to the contrary are unpersuasive.  First, Plaintiffs appear to allege that sanctions should be imposed because Gigglesworld violated Court orders, specifically the case management plan and scheduling orders endorsed by the Court.  (Pls.' Mem at 13.)  While it is accurate that the case management plan included dates for specific discovery deadlines, (*see* Drago Declaration Ex. I), the record demonstrates Plaintiff took no action to compel compliance with the

14

deadlines.  Moreover, Plaintiffs fail to cite any support for the violation of a case management plan and scheduling order underlying Rule 37 sanctions.  Instead, the cases cited by Plaintiffs either involve motions to compel or do not impose Rule 37 sanctions.  *See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp*. 694 F.3d 155, 158 (2d. Cir. 2012) (vacating sanctions where the plaintiff failed to provide expert disclosures until over a month after the Court-ordered deadline after the Court warned no further extensions would be granted); *United States v. Local 1804-1, Int'l Longshoremen's Assn.*, 44 F.3d 1091, 1096 (2d. Cir. 1995) (discussing a civil contempt order), *Update Art, Inc. v. Modiin Publ'g Ltd*., 843 F.2d 67, 71 (2d. Cir. 1988) (upholding sanctions where the appellants failed to respond to court orders compelling them to respond to discovery requests); *Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity & Vacation Funds v. Elite Terrazzo Flooring, Inc*., 18 CV 1471 (CBA)(CLP), 2020 WL 1172635, at *8–9 (E.D.N.Y. Feb. 20, 2020) (issuing sanctions after the Court asked plaintiffs' counsel to withdraw their motion to compel and extended the defendants' time to respond to discovery requests, which they again failed to answer and then failed to appear at a show cause hearing).

Next, Plaintiffs argue that the Court should utilize its broad discretion and impose sanctions for misconduct during discovery even with no explicit discovery order.  (Pls.' Mem at 14.) Plaintiffs go through the four relevant factors, alleging they all fall in favor of imposing sanctions. The Court disagrees.

First, Plaintiffs aver that Gigglesworld's conduct was willful "based on the sordid history" of this matter.  (*Id*. at 16.)  While Gigglesworld's discovery responses were willfully incomplete, there is no indication that Gigglesworld was intentionally trying to keep EC Supply's identity hidden from Plaintiffs.  Further, Gigglesworld is not accused of violating any Court orders or even responding to any concerns about their discovery responses in a problematic manner.  Second,

15

Plaintiffs aver that there is no lesser sanction that would compensate them against having their day in court against EC Supply.  While the Court generally agrees with Plaintiffs, as discussed above this was also due to their own actions.  Third, Plaintiffs aver that the record shows a "lengthy time period during which Gigglesworld was deceptive with regard to its discovery responses." (*Id.*) However, that is irrelevant to this factor, which considers the duration of the period of *non-compliance*.  Here, there was no period of non-compliance, as Gigglesworld responded to discovery requests, and Plaintiffs failed to alert the Court or file a motion to compel.  Lastly, Plaintiffs fail to discuss the fourth factor, which is whether the non-compliant party had been warned of the consequences of noncompliance.  As discussed, there was no non-compliance, and therefore no warning was given.  While the Plaintiffs will suffer prejudice due to the dismissal of EC Supply from their suit, they cannot try to correct their shortcomings by making Gigglesworld take the full blame.

## **CONCLUSION**

For the foregoing reasons, Defendant EC Supply's motion for summary judgment is GRANTED and Plaintiffs' motion for Rule 37 sanctions against Third-Party Defendant Gigglesworld is DENIED.  EC Supply is terminated as a named Defendant only.  The remaining claims in this action include Plaintiffs' claims against RRV Enterprises, LG Chem's cross-claims against RRV Enterprises and Gigglesworld, EC Supply's cross-claims against RRV Enterprises and Gigglesworld, and Gigglesworld's cross-claim against EC Supply.  The parties are directed to appear for a telephonic pre-trial conference on December 8, 2021 at 12:00 PM.  To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 165; 200; 202; 204; 205; 206; and 207.

SO ORDERED:

Dated: November 8, 2021
   White Plains, New York

_____
   NELSON S. ROMÁN
   United States District Judge